# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA § | | |
| § | | |
| V. § | | CASE NO. 4:12-cr-96 |
| § | | Judge Crone |
| JESUS ALVAREZ § | | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant's Motion to Suppress Without Warrant (Dkt. #39). After considering the evidence presented and the arguments of counsel at the October 18, 2012 hearing, the Court finds that the motion should be DENIED.

On September 5, 2012, Defendant filed his motion to suppress (Dkt. #39). On September 24, 2012, the United States filed a response (Dkt. #45). On October 18, 2012, the Court conducted a hearing on the motion. Defendant has asked the Court to suppress any and all evidence seized from the black Chrysler 300 on May 7, 2012. Defendant also seeks to suppress any statements he made to law enforcement on the same day. In response, the Government argues that the search of the vehicle was permissible because it was based on probable cause.

### EVIDENCE PRESENTED

At the hearing, the Government offered testimony of Special Agent Richard Clough with the United States Drug Enforcement Administration ("DEA"). Defendant offered no testimony or evidence in support of his position.

At the hearing, Agent Clough testified that on May 6, 2012, information was received from a Confidential Source ("CS") that he/she was going to meet with Juan Gutierrez in McKinney, Texas, for the purpose of acquiring five kilograms of cocaine. The CS left the location and began

driving to McKinney, Texas. Gutierrez and the driver, later identified as Roosevelt Cano ("Cano") were arrested. Agents seized approximately five kilograms of cocaine wrapped in black electrical tape.

After the arrest of Gutierrez and Cano, agents interviewed a cooperating defendant ("CD-1"). The interview of CD-1 eventually led to the arrest of the CD-1's cocaine supplier. All of the information supplied by CD-1 to the agents for that operation proved to be true. Moreover, the information CD-1 provided to the agents was further incriminating to him/her.

After the arrest of the cocaine supplier, CD-1 stated that he/she purchased crystal methamphetamine from an individual identified as Marcos Estrada ("Estrada"). CD-1 told agents that Estrada distributes large quantities of crystal methamphetamine in the Dallas, Texas area. CD-1 stated that Estrada drives a black Chrysler 300. CD-1 stated that Estrada utilizes a large heavyset Hispanic male only known as Gordo, later identified as Defendant Jesus Alvarez by agents, to make deliveries of methamphetamine. CD-1 stated that Defendant had delivered multi-ounce quantities of crystal methamphetamine to CD-1 on numerous occasions in the past. CD-1 stated that Defendant works for Estrada distributing crystal methamphetamine to Estrada's customers. CD-1 further indicated that Estrada has sold multi-ounce quantities of crystal methamphetamine in the past to CD-1, which he distributed in the Eastern and Northern District of Texas. CD-1 stated that several months ago, Estrada showed CD-1 a kilogram of crystal methamphetamine in an apartment belonging to Estrada.

Through a series of recorded telephone calls, CD-1 and Estrada set up a delivery of crystal methamphetamine from Estrada to CD-1 at a mall in Mesquite, Texas. Initially, Estrada was to meet personally with CD-1 with the crystal methamphetamine, but toward the end of the series of phone calls, Estrada told CD-1 that one of his "runners" would be making the delivery. The CD-1 told

agents that it was possible if Estrada did not arrive, it would be one of his runners, as had happened previously, and CD-1 identified two possible cars the runners could arrive in, including the black Chrysler 300. He described the runner as a heavyset Hispanic male with numerous tattoos. Agents saw a black Chrysler 300 arrive in the parking lot around the time and at the location indicated by CD-1. The vehicle was driven by a Hispanic male matching the description CD-1 had given as one of Estrada's runners. At or around the same time Agent Clough identified the vehicle, he was informed that CD-1 received a call from the runner indicating that he was at the agreed-upon location.

The vehicle was pulled over and the suspect was removed. As he matched the description of the runner provided by CD-1, a search of the vehicle was performed and a plastic bag containing a crystal-like substance, later determined to be crystal methamphetamine, was found. The bag was concealed behind the area where the car radio was located.

Defendant claimed neither the vehicle nor its contents belonged to him. While searching the vehicle, agents found documents with the name of Marcos Estrada and an address of 3839 Dixon Circle #D, Dallas, Texas. Agents were able to identify the address as the Stonewood Terrace apartments, where CD-1 had told agents Estrada resided. CD-1 told agents that Estrada lives upstairs in an apartment on the left side of the building. On May 7, 2012, CD-1 was shown a photo of the apartment complex where Estrada was believed to reside. CD-1 positively identified the apartment complex from an email photo to be the Stonewood Terrace apartments. CD-1 indicated the apartment was upstairs, and it was the apartment on the left as you face the front door. Agents later executed a search warrant at the apartment and it was confirmed to be Estrada's apartment.

After his arrest, agents transported the Defendant to the Mesquite Police Department.

Defendant spoke with his lawyer and then indicated that he would not cooperate with the investigation. Agent Clough asked another agent the weight of the confiscated drugs. The agent answered him, at which point Defendant, of his own volition and without being asked or questioned, interjected that the amount stated by the agent was incorrect and that it was approximately 600-680 grams of crystal methamphetamine.

**ANALYSIS**

Defendant argues that the search of his car violated his rights under the Fourth Amendment. "The automobile exception to the Fourth Amendment's warrant requirement permits authorities to search a vehicle when they have probable cause to believe it contains contraband." *United States v. Saucedo-Munoz,* 307 F.3d 344, 351 (5th Cir. 2002). Whether probable cause exists requires a "practical, common-sense" determination of whether the circumstances, including information obtained from an informant, establish "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Reyes,* 792 F.2d 536, 539 (5th Cir. 1986) (internal quotation marks and citation omitted). The Court must look to the totality of the circumstances to determine whether there was probable cause that a vehicle contained contraband. *United States v. Fields*, 456 F.3d 519, 523 (5th Cir. 2006) (citing *Illinois v. Gates,* 462 U.S. 213, 230-31, 103 S. Ct. 2317, 76 L. Ed.2d 527 (1983)). As the Fifth Circuit has explained:

> It is well-settled that probable cause to search an automobile exists when trustworthy facts and circumstances within the officer's personal knowledge would cause a reasonably prudent man to believe that the vehicle contains contraband. Probable cause determinations are not to be made on the basis of factors considered in isolation, but rather on the totality of the circumstances. A police officer may draw inferences based on his own experience in deciding whether probable cause exists, including inferences that might well elude an untrained person. Proof of probable cause requires less evidence than proof beyond a reasonable doubt-but more than bare suspicion.

*United States v. Banuelos-Romero*, 597 F.3d 763, 767-68 (5th Cir. 2010) (internal citations and quotations omitted).

In this case, the Government has argued that the officers had probable cause to believe Defendant's vehicle contained contraband. The Court agrees.

Defendant's car was searched after officers received information from CD-1 which indicated that the vehicle would contain evidence of a drug transaction. The fact that CD-1 had no past history as an informant does not necessarily make him/her an unreliable source.[1] *United States v. Steele*, 353 F. App'x 908, 910 (5th Cir. 2009) ("Although the informant in this case was a first-time informant, she earned Officer White's trust by identifying multiple drug dealers that Officer White already knew. In addition, the informant admitted to purchasing cocaine from Steele, an admission against penal interest. Both of these factors added to the informant's credibility."). First, the information CD-1 provided about Defendant was against his/her penal interest, a fact which, while not determinative of probable cause, weighs in favor of the trustworthiness of the information provided. *See, e.g., id; United States v. Ashley*, 569 F.2d 975, 982 (5th Cir. 1978) ("such an admission is one of many cumulating factors to be considered" in determining probable cause).

Second, Agent Clough testified that all of the information CD-1 shared with law enforcement turned out to be true and correct. In fact, some of the information shared by CD-1 before Defendant's arrest resulted in the arrest of CD-1's cocaine supplier. That the information shared by CD-1 was corroborated by the DEA's investigations bolster CD-1's reliability. *See Ashley*, 569 F.2d at 982.

---

[1] Defendant's primary argument at the hearing was that CD-1 was unreliable and his/her information failed to establish probable cause. Defendant's argument about the reliability of the CD-1 was not asserted in his motion.

Finally, Agent Clough is an experienced law enforcement officer with several years of experience with the DEA; such experience supports his determination that there would have been contraband in the car in question. *U.S. v. Hearn*, 563 F.3d 95, 103 (5th Cir. 2009) (noting that a police officer may draw inferences that might elude an untrained person based on his own experience in deciding whether probable cause exists).

In light of all of the circumstances and facts before Agent Clough on the evening of May 7, 2012, the Court finds that such information would cause a reasonably prudent person to believe that the black Chrysler 300 would contain evidence of a drug transaction. There was sufficient evidence to support probable cause to search the vehicle and for the arrest of Defendant. Accordingly, having considered the evidence presented, the Court finds that the totality of the facts presented indicate that the search of the vehicle here was made with probable cause.

To the extent Defendant's motion seeks suppression of Defendant's statements after he was arrested, the Court finds that there is no basis to suppress such statements. In order for the Government to introduce Defendant's statements, it generally must prove that the accused voluntarily, knowingly and intelligently waived his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966). Indeed, to prove a valid waiver, the Government must show that the relinquishment of the defendant's rights was voluntary and that the defendant was fully aware that the right was being waived and the consequences of waiving that right. *Id.*

At the hearing, Agent Clough testified that Defendant was administered his *Miranda* warnings. Defendant did not offer any evidence or testimony to the contrary. Having heard the

testimony presented, the Court finds that Defendant made a knowing and voluntary waiver of his *Miranda* rights and was not coerced or threatened by law enforcement officers to do so. Moreover, Defendant volunteered the statement he made. Therefore, his statements regarding the amount of drugs should not be suppressed.

## RECOMMENDATION

The Court recommends that Defendant's Motion to Suppress Without Warrant (Dkt. #39) be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 6th day of November, 2012.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE